### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **STEPHEN PIKE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **vs.** | ] | **Case No:** |
| | ] | |
| **CITY OF MEMPHIS GOVERNMENT,** | ] | **JURY DEMAND** |
| **CHRISTIAN BROTHERS** | ] | |
| **UNIVERSITY,** | ] | |
| **and MEMPHIS MUSEUMS, INC.** | ] | |
| | ] | |
| **Defendants.** | ] | |

### <u>COMPLAINT</u>

Comes now the Plaintiff, STEPHEN PIKE, by and through counsel and for cause of action will respectfully show to the Court as follows:

### <u>JURISDICTION and VENUE</u>

1.      This action involves the application of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq*., and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401, *et seq*.

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same controversy.

3.      The claims asserted in this action arose in Shelby County, Memphis, Tennessee; therefore, proper venue for this action lies within the Western District of Tennessee pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PREREQUISITES

4.      Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C.A. § 2000e. A Notice of Right to Sue was issued on August 28, 2020, and received by Plaintiff on August 28, 2020, a true and correct copy of which is attached hereto as Exhibit A.

## PARTIES

5.      Stephen Pike ("Plaintiff"), is an adult male individual and citizen of the United States who resides in Shelby County, Memphis, Tennessee.

6.      At all relevant times, Plaintiff was an employee of Defendant City of Memphis, Defendant Christian Brothers University and Defendant Memphis Museums, Inc., (together "Defendants") within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, et seq.

7.      Defendant Christian Brothers University ("CBU") is a private Catholic university run by the Institute of the Brothers of the Christian Schools in Memphis, TN.

8.      Defendant Memphis Museums, Inc. ("MMI") is a non-profit organization and regularly conducts business at 3050 Central Avenue, Memphis, TN 38111.

9.      Defendant City of Memphis ("COM") is a Tennessee governmental entity.

10.      At all relevant times, Defendants engaged in commerce or in an industry or activity affecting commerce and employed twenty (20) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year pursuant to 29 U.S.C. § 621, *et seq*., the Age Discrimination in Employment Act.

## FACTUAL ALLEGATIONS

11.      On December 30, 2002, Plaintiff was hired by the City of Memphis, through mayoral appointment, to perform work in Memphis, TN, as the Director of Museums.

12. Upon appointment, Plaintiff became a "non-voting ex-officio member" of the MMI Board, allowing him to participate in deliberations without the power of holding office and voting.

13. Per the MMI Board bylaws, the Director of Museums is charged with the responsibility of the daily operation of the Museum System and full management authority of their approved, operating, capital, and programming budgets.

14. Additionally, the MMI bylaws appoint the Director of Museums as the paid Chief Administrative Officer who is fully empowered to select and dismiss MMI grant funded and other City of Memphis employees.

15. Plaintiff was fifty-four (54) years old at the time he was hired by Defendants.

16. At the time of his employment, Plaintiff was paid compensation both through the COM and CBU.

17. At the time of his employment, Plaintiff's compensation through the CBU was directed with the instruction of the MMI.

18. Eventually, CBU no longer compensated Plaintiff and the MMI compensated Plaintiff directly.

19. With support from the MMI Board in 2007, Plaintiff created a long-term master plan ("the Plan") assembling a team of professional museum experts and architects aiming to renovate and refurbish all the attractions in the Memphis Museum System.

20. In 2010, Plaintiff successfully led the Memphis Museum system through the accreditation process by the American Alliance of Museums.

21. Less than 9% of all American museums attain such status.

22.     On August 31, 2011, Plaintiff was named in Memphis Magazine's annual "Who's Who," a selection of "those Memphians who played the largest role in our city's present and future."

23.     Plaintiff was named in this magazine for many other years subsequently as well.

24.     Plaintiff created and successfully implemented "Memphis Moments," a radio promotion program through National Public Radio to advertise upcoming displays.

25.     This promotional program was directed to Plaintiff's 2007 Plan for "growth, prosperity, and a sustainable operating capacity."

26.     From 2015-2016, Plaintiff was successful in his project to refurbish the Sharpe Planetarium in Memphis, Tennessee.

27.     This Sharpe Planetarium refurbishment was a goal of Plaintiff's 2007 Plan.

28.     In 2017, Plaintiff successfully led a project to restore and refurbish the Pink Palace Museum, a historical Memphis mansion.

29.     The Pink Palace restoration and refurbishment was a goal of Plaintiff's 2007 Plan.

30.     On August 9, 2017, the Memphis City Council awarded Plaintiff with a certified commendation for the Pink Palace project, expressing "appreciation of outstanding contribution to the community."

31.     In 2017, Plaintiff began to advocate for organizing a large event for the City of Memphis's bicentennial celebration, which would occur in 2019.

32.     With the MMI Board's instruction, Plaintiff set out to communicate with the City of Memphis's press officer to begin coordinating for the Bicentennial.

33.     The day after and without the Board present, Munoz-Blanco instructed Plaintiff not to contact the City of Memphis's press officer.

34.     Regardless, Plaintiff successfully orchestrated the exhibition titled "Making Memphis: 200 Years of Community" on Memphis's Bicentennial in 2019.

35.     The Bicentennial exhibition won an "Award of Excellence," from the AASLH (the American Association for State and Local History"), recognized as one of the most prestigious achievements in preservation and interpretation of state and local history.

36.     Before her termination, Ms. Maria Munoz-Blanco would submit an evaluation of Plaintiff's performance alongside Plaintiff's evaluation of his own performance.

37.     Despite Plaintiff's success, Munoz-Blanco submitted negative reviews of Plaintiff's work, specifically critiquing Plaintiff as outdated.

38.     She also criticized Plaintiff's initiatives calling them "mere refurbishments".

39.     Ms. Blanco's criticisms were directed at Plaintiff's age.

40.     The comments in Munoz-Blanco's review include, but are not limited to: "dated marketing and promotional strategies at the museum."

41.     She described Plaintiff's technology plan as "4-5 years behind the curve."

42.     After Ms. Blanco's termination, criticism of the Plaintiff continued by Mr. Mark Columbo.

43.     Per the MMI Board bylaws, the President has the authority, upon authorization by the Board of Trustees, to recommend the employment or discharge of the Director of Museums.

44.     In July of 2017, Mark Columbo became the president of the MMI Board.

45.     On multiple occasions, Mr. Columbo questioned Plaintiff on his retirement plans.

46.     In response to Mr. Columbo's remarks, Plaintiff responded that he intended to stay on to see the development of the 2007 Plan he had been working on for years.

47.     In response to Plaintiff's answer, Mr. Columbo persisted with comments regarding his age.

48.     Some of these comments included, but were not limited to: "you must have some idea," and "you're on the back nine."

49.     Nick Walker, acting as Acting Director of MMI, sent Plaintiff an email on Friday, December 13, 2019 asking Plaintiff to meet him at 2:00 PM on December 16, 2019.

50.     Mr. Walker stated he wanted to meet because he wanted to know more about the museum system.

51.     At the meeting, Plaintiff was met by Mr. Walker and a City of Memphis Human Resources representative.

52.     These individuals told Plaintiff the Mayor was "unappointing" him upon recommendation of the board.

53.     Mr. Walker went outside with Plaintiff to get his City of Memphis employee badge.

54.     Mr. Walker told Plaintiff he just wanted to say he was sorry it hadn't been handled in a more dignified manner.

55.     Mr. Walker did not mention to Plaintiff at the time that it was the Board of Trustees who asked the mayor to terminate Plaintiff.

56.     Mr. Walker indicated it was the Mayor's decision alone.

57.     In correspondence which the Board of Trustees claims was sent to the mayor they claim:

> "After much deliberation, the Committee feels the necessity of this request to insure (sic) the growth and expanded number of visitors to the Pink Palace and related properties. Mr. Pike consistently seeks to move in directions that undermine the decisions of the Board in regard to the properties. We request that you remove him from the position."

58.     Mr. Pike had never been confronted about "consistently seek(ing) to move in directions that undermine the decisions of the Board in regard to the properties."

59.     This correspondence was created after his termination, not before.

60.     A copy of the "minutes" from a board meeting where the alleged vote took place was provided by the City of Memphis in EEOC filings.

61.     Despite being public record, these minutes had not been posted online.

62.     The "minutes" were from an October 30, 2019 "meeting" of the Board; however, Plaintiff was not terminated until late December 2019.

63.     No disciplinary action was taken against Plaintiff during his entire employment history with MMI despite the board's now stated claim that Plaintiff "was consistently seeking to move in directions that undermine the decisions of the board".

64.     In a press release in December, 2019, the City of Memphis never mentioned any of Plaintiff's alleged shortcomings later claimed by the board.

65.     No alleged shortcomings were identified by any Defendant prior to his filing with the EEOC.

66.     Plaintiff returned to the museum to collect personal belongings he brought with him to the museum that morning.

67.     Security told Plaintiff they had been told not to let him in.

68.     This refusal of entry was after nearly 20 years of employment.

69.     Plaintiff, obviously knowing the security personnel, asked them to come with him to his office so he could collect his belongings.

70.     Plaintiff found the Board Pres., Linda Foster, in his outer office with his assistant and Mr. Jerry Goudy, Business Manager.

71.     Ms. Foster was shaken to see Plaintiff.

72.     She told Plaintiff the Board "voted for it unanimously."

73.     Plaintiff spoke to three (3) trustees who said they were surprised to learn of his termination.

74.     Plaintiff gave Mr. Goudy his keys and COM phone.

75.     Plaintiff sent a brief email to the staff, then left.

76.     Plaintiff came back the next Sunday to empty his office.

77.     However, Plaintiff was unable to take any documents of a personal nature or to retrieve 17 years of contacts.

78.     Plaintiff subsequently mentioned the way he was terminated to a large donor to the museum who wrote a letter to the board expressing concern regarding Mr. Pike's termination being without valid reason.

79.     COM, on their own accord and without request from the Plaintiff, then placed three (3) months payment into Mr. Pike's personal bank account.

80.     Plaintiff was seventy-one (71) years old at the time he received notice of his termination and had worked as the Director of Museums for sixteen (16) years.

81.     On January 6, 2020, MMI announced the appointment of a new director of museums, Kevin Thompson, who had served on the MMI Board from 2012-2019.

82.     Kevin Thompson is more than twenty (20) years younger than Plaintiff.

**COUNT I – AGE DISCRIMINATION**
**(29 U.S.C. § 623(a)(1) & T.C.A. § 4-21-401, et. seq.)**

83.     Plaintiff hereby re-alleges paragraphs 11 through 82.

84.     Plaintiff asserts Defendant discriminated against plaintiff and interfered with his rights in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 621, *et seq*. and T.C.A. § 4-21-401, *et seq*.

85.     At said dates and times as set forth herein, Plaintiff was over the age of forty (40).

86.     Plaintiff's co-workers and supervisors treated him differently and less favorably than younger employees.

87.     Plaintiff was treated poorly and received disparate treatment as compared to younger employees who were similarly situated.

88.     Defendant violated the Age Discrimination in Employment Act, 29 U.S. C. § 621, *et seq*. and the Tennessee Human Rights Act by wrongfully discriminating against Plaintiff on the basis of his age.

89.     There is a causal connection between Plaintiff's age and his discharge.

90.     At all relevant times set forth herein:

(a)     Plaintiff was over forty years of age and was qualified to perform the required job duties.

(b)     Plaintiff was discharged;

(c)     Plaintiff's position was filled or replaced by a substantially younger person;

(d)     Age was the determining factor in the Defendant's decision to discriminate against the Plaintiff and to discharge Plaintiff; and

(e)     Defendant did not have a legitimate, non-discriminatory reason for discharging Plaintiff.

91.    As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1)    all amounts of wages Plaintiff would have received but for Defendant's willful violation        of        his        rights, front        pay        (or reinstatement), liquidated damages, and all other relief allowed by the ADEA;

(2)    compensatory damages pursuant to the Tennessee Human Rights Act;

(3)    all reasonable costs and attorney's fees pursuant to the ADEA and THRA;

(4)    prejudgment and post judgment interest;

(5)    any such other legal relief as may be appropriate or to which Plaintiff may be entitled under federal or state law.

Respectfully Submitted,

**THE EMPLOYMENT AND CONSUMER LAW GROUP**

**/s/ JONATHAN A. STREET**
**JONATHAN A.  STREET, BPR No. 021712**
**BRANDON HALL, BPR No. 034027**
1720 West End Ave., Ste 402
Nashville, TN 37203
(615) 850-0632

*Attorneys for Plaintiff*